UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL ANGELO BURNETT,

    Plaintiff,      Case No. 2:25-cv-136

v.             Honorable Paul L. Maloney

JAMES CORRIGAN et al.,

    Defendants.

_____/

## OPINION

   This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed a motion for leave to proceed *in forma pauperis*. (ECF No. 2.) However, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

   Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts. gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the United States Court of Appeals for the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of

---

*in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See* Op. & J., *Burnett v. Marschke et al.*, No. 2:09-cv-225 (W.D. Mich. Feb. 5, 2010), (ECF Nos. 6, 7); Op. & J., *Burnett v. Hofbauer et al.*, No. 2:09-cv-192 (W.D. Mich. Dec. 2, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Caruso et al.*, No. 2:09-cv-180 (W.D. Mich. Oct. 8, 2009), (ECF Nos. 8, 9); Op. & J., *Burnett v. Hill et al.*, No. 2:09-cv-39 (W.D. Mich. Mar. 6, 2009), (ECF Nos. 8, 9); Op. & Order, J., *Burnett v. Caruso et al.*, No. 2:08-cv-168 (W.D. Mich. Jan. 5, 2009), (ECF Nos. 15, 16). In addition, Plaintiff has been denied leave to proceed *in forma pauperis* under the three-strikes rule in numerous cases. All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996, and all of the dismissals constitute "strikes" under the standard articulated by the Sixth Circuit in *Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024).

As explained below, Plaintiff's allegations in the present action do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions

of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).

In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is currently incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred there. Plaintiff sues the following URF personnel: Warden James Corrigan and Correctional Officers Unknown Corvatis, Unknown Campbell, Unknown Gunn, Unknown Elkins, Unknown Perish, Unknown Abramson, Unknown Plumm, Unknown Hilley, and Unknown Parties #1 and #2.

In his complaint, Plaintiff alleges that in 2005, the MDOC closed all gun towers in the correctional facilities and replaced them with "personal protection device security systems." (Compl., ECF No. 1, PageID.4.) Plaintiff contends that these systems are "locked onto prison staff when they come through the control center to report to work by [the] custody of security." (*Id.*, PageID.5.) According to Plaintiff, the "custody of security" uses the personal protection devices

4

(PPDs) to move feces and urine from correctional officers to Plaintiff, and Plaintiff is forced to invest feces and urine out of sight of other inmates. (*Id.*)

Plaintiff arrived at URF on August 23, 2024. (*Id.*) He alleges that on that same date, the "custody of security" assaulted him with feces and forced Plaintiff to ingest feces while he was waiting to be assigned to a housing unit. (*Id.*) Shortly thereafter, Plaintiff was assigned to the Lime housing unit. (*Id.*) He contends that over the next 24 hours, Defendants Corvatis, Campbell, Elkins, Plumbb, Hilley, and Unknown Parties forced him to ingest feces and urine. (*Id.*)

On August 26, 2024, the "custody of security" told Plaintiff that officers in the Lime housing unit would continue assaulting Plaintiff with feces and urine because they "could not get the security device of the personal protection device security system off [P]laintiff." (*Id.*, PageID.6.) Plaintiff claims that the "assaults occur on all three work shifts, and have no end in sight." (*Id.*) Plaintiff contends that the "custody of security" told Plaintiff that staff "had tracked [P]laintiff back to Detroit when [P]laintiff paroled from Chippewa in April 1990, and assaulted [P]laintiff with feces, which [P]laintiff was forced to ingest." (*Id.*) Plaintiff avers that he was "frighten[ed] and confused, trying to understand what had occurred." (*Id.*)

Plaintiff states further that officers have not notified law enforcement officials about the ongoing assaults because they are trying to kill Plaintiff. (*Id.*, PageID.7.) The "custody of security" told Plaintiff that he would not get any medical care for the nausea, vomiting, and physical illness he experienced from the assaults, because the nurses depended on the officers to protect their safety. (*Id.*) Plaintiff contends that nurses have refused to respond to his medical kites and have also falsified his medical records, "alleging that [P]laintiff was a no show for scheduled medical callouts, or by claiming [P]laintiff recanted his statement in [a] medical kite accusing prison staff of assault to the nurses." (*Id.*)

5

Additionally, Plaintiff alleges that Defendant Gunn assaulted Plaintiff with feces and forced him to ingest feces on January 11, 2025. (*Id.*) Plaintiff alleges further that Defendants Corvatis, Campbell, Gunn, Elkins, Plumm, Hilley, and the Unknown Parties communicate with Plaintiff through the "custody of security" so that they can call Plaintiff "profane names and racial slurs[] that are not overheard by other prisoners." (*Id.*, PageID.8.) Plaintiff faults Defendant Corrigan for failing to protect him from the other Defendants even after being placed on notice by Plaintiff's "numerous grievance appeals." (*Id.*) According to Plaintiff, Defendant Corrigan's failure to protect Plaintiff has resulted in Plaintiff's "unnecessary pain and suffering and an increase[d] risk of harm to his future health of developing esophageal cancer." (*Id.*)

Plaintiff goes on to state that as a result of being forced to ingest feces and urine, he suffers from vomiting his stomach contents, "resulting in harmful enzymes coming into contact with his esophagus, intense burning in the chest and throat, chest pain that mimic[s] a heart attack,  nausea, and aggravation of his preexisting [GERD]." (*Id.*) Plaintiff claims that Defendants' actions interfere with his treatment plain for GERD. (*Id.*) He avers that doctors recently performed an endoscopy and determined that Plaintiff had developed esophagitis. (*Id.*, PageID.9.) Plaintiff alleges that doctors removed a polyp that was not cancerous, but that Defendants' actions have "increase[d] his risk of developing esophageal cancer, which is amongst the fastest growing and most lethal form of cancer in the United States." (*Id.*)

Plaintiff goes on to allege that on November 21, 2024, he filed a grievance after he was assaulted with urine and forced to ingest it while asleep. (*Id.*) On December 10, 2024, Defendant Abramson interviewed Plaintiff about the grievance and demanded that Plaintiff "sign the section stating the issue is resolved." (*Id.*) Plaintiff refused, and Defendant Abramson responded that if Plaintiff appealed to Step II, he would receive a class II misconduct for interference with the

administration of rules and a class III misconduct for lying to an employee. (*Id.*) Plaintiff did appeal, and on December 18, 2024, Defendant Abramson issued the two misconducts. (*Id.*, PageID.8–9.) Plaintiff contends that the only way Defendant Abramson could know that Plaintiff appealed the grievance to Step II is through the "custody of security," who have been "observing and attacking" Plaintiff ever since his arrival at URF. (*Id.*, PageID.9.)

Plaintiff appeared before Defendant Perish for a disciplinary hearing on December 26, 2024. (*Id.*) Plaintiff claims that Defendant Perish refused to allow Plaintiff to present a defense, instead indicating that Plaintiff pleaded guilty to the misconducts and forging Plaintiff's signature in the waiver of hearing section. (*Id.*) Defendant Perish sanctioned Plaintiff to three days of toplock. (*Id.*) Plaintiff contends that at that time, Defendant Perish did not know that Plaintiff suffers from nerve damage in the hand he uses to write, and that Plaintiff "cannot write neatly." (*Id.*)

As an initial matter, while the Court does not condone the use of profane language and racial slurs towards inmates, Defendants' alleged use of such language towards Plaintiff simply fails to demonstrate that Plaintiff was in imminent danger of serious physical harm at the time he filed this lawsuit. Likewise, Plaintiff's allegations concerning the receipt of false misconducts also fail to rise to the level of imminent danger of serious physical harm.

Moreover, as set forth above, the gist of Plaintiff's complaint is that Defendants use their PPDs to continuously force Plaintiff to ingest feces and urine (as well as to call Plaintiff "profane names and racial slurs[] that are not overheard by other prisoners"), and that Defendant Corrigan has failed to protect Plaintiff from these actions. Plaintiff contends that he suffers from various medical maladies as a result. Plaintiff's allegations regarding forcible consumption of human waste have been some of Plaintiff's "go to" allegations to avoid the "three strike" consequences of

previously filing meritless lawsuits, and Plaintiff has previously alleged that the "personal protection devices system" or a similar "system" was involved in his forcible consumption of human waste.

For example, in three cases filed in 2020, Plaintiff alleged that various officials used the prison "Safety System" to deliver feces and urine directly into Plaintiff's mouth over a period of years. *See Burnett v. Macauley et al.*, No. 1:20-cv-1116 (W.D. Mich.); *Burnett v. Wilborn et al.*, No. 1:20-cv-1161 (W.D. Mich.); *Burnett v. Washington*, No. 1:20-cv-1173 (W.D. Mich.).[2] In at least some of those cases, Plaintiff admitted that he suffered from paranoia and schizophrenia. The Court ultimately determined that Plaintiff's allegations of imminent danger in all three cases were irrational and clearly baseless, and, therefore, did not support a conclusion that Plaintiff was in imminent danger of serious physical injury within the meaning of § 1915(g). *See Vandiver*, 727 F.3d at 585; *Rittner*, 290 F. App'x at 798.

Similarly, in a case filed in 2023, Plaintiff presented nearly identical allegations to those presented in the above-discussed 2020 cases; however, Plaintiff alleged that Defendants at LCF used "personal protection device computer systems" (rather than the prison "Safety System") "on which they can 'walk and talk with officers and Plaintiff,' . . . 'assault Plaintiff with officers' waste' and . . . 'shout[] racial slurs and profanity in Plaintiff's ear twenty-four hours a day.'" Op.,

---

[2] Plaintiff's allegations are also similar to allegations in complaints he filed in the United States District Court for the Eastern District of Michigan. *See Burnett v. Jenkins et al.*, No. 2:19-cv-13513 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility and Ionia Correctional Facility delivered feces and urine into his mouth using the prison safety systems); *Burnett v. Walsh et al.*, No. 2:18-cv-11063 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility used the Safety System to deliver feces and other bodily fluids into his mouth); *Burnett v. Herron et al.*, No. 5:18-cv-12471 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility put feces into his mouth at least three times a week). Additionally, Plaintiff's allegations are similar to allegations in the complaint that he filed in *Burnett v. Corrigan et al.*, No. 2:22-cv-129 (W.D. Mich.), in which he alleged that officials at Chippewa Correctional Facility sprayed human waste in his face and mouth using an industrial-sized spray bottle.

*Burnett v. Morrison et al.*, No. 1:23-cv-1091 (W.D. Mich. Nov. 21, 2023), (ECF No. 6, PageID.65) (quoting Plaintiff's complaint). As the Court had concluded in the 2020 cases, in the 2023 case, the Court concluded that "Plaintiff's present allegations of imminent danger [were] 'fantastic or delusional and r[o]se to the level of irrational or wholly incredible' and d[id] not support a conclusion that Plaintiff [was] in imminent danger of serious physical injury." *Id.*, (ECF No. 6, PageID.65–66) (citation omitted).

Additionally, in a case filed in November of 2024, Plaintiff sued several officials at four separate MDOC facilities, alleging that those officials had agreed to rape and murder Plaintiff by poisoning him with human feces. *See* Op., *Burnett v. Lane et al.*, No. 2:24-cv-200 (W.D. Mich. Dec. 26, 2024), (ECF No. 7, PageID.40). Plaintiff alleged that these acts were recording using the PPD system. *Id.* In that case, "as the Court ha[d] concluded in many of Plaintiff's prior cases," the Court concluded in the November 2024 case that "Plaintiff's present allegations of imminent danger [were] largely 'fantastic or delusional and r[o]se to the level of irrational or wholly incredible,' *Rittner*, 290 F. App'x at 79[8], and d[id] not support a conclusion that Plaintiff [was] in imminent danger of serious physical injury." *Id.*, (ECF No. 7, PageID.44). In light of this, the Court concluded that Plaintiff was barred from proceeding *in forma pauperis* under Section 1915(g) in that action. *See id.*

In the present case, Plaintiff again suggests that the Defendants have used the "personal protection devices system" to force Plaintiff to regularly consume human waste. Plaintiff's allegations of alleged imminent danger are analogous to his allegations in the above-discussed cases. As the Court has concluded in many of Plaintiff's prior cases, the Court concludes that Plaintiff's present allegations of imminent danger are "fantastic or delusional and rise to the level

of irrational or wholly incredible," *Rittner*, 290 F. App'x at 79, and do not support a conclusion that Plaintiff is in imminent danger of serious physical injury.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

### Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis* (ECF No. 2) and will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[3]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing

---

[3] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.

fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

      An order and judgment consistent with this opinion will be entered.


Dated:   July 22, 2025                /s/ Paul L. Maloney        
                                                                Paul L. Maloney
                                                               United States District Judge